# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

ELIZABETH AVANT,

      Plaintiff,

    *vs.*                             **CAUSE NO.  1:14-cv-1562-SEB-DKL**

CAROLYN W. COLVIN, **Commissioner of Social Security,**

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Elizabeth Avant brought this suit for judicial review of the defendant Commissioner's denial of her application for disability-insurance and supplemental-security-income benefits under the Social Security Act for a disability that she alleges began May 31, 2004.  The parties' arguments are fully briefed and this case is ready for decision.  The district judge referred the issues to this magistrate judge for a report and recommendation as to their appropriate disposition under 28 U.S.C. § 636(b)(1)(B).  *Order Referring Issues to Magistrate Judge* [doc. 31].

### Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. ▪ 405(g); *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003).  Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).  If

the evidence is sufficient for a reasonable person to conclude that it adequately supports

the Commissioner's decision, then it is substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758

(7th Cir. 2004).  This limited scope of judicial review derives from the principle that

Congress has designated the Commissioner, not the courts, to make disability

determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot
> engage in our own analysis of whether [the claimant] is severely impaired
> as defined by the SSA regulations.  Nor may we reweigh evidence, resolve
> conflicts in the record, decide questions of credibility, or, in general,
> substitute our own judgment for that of the Commissioner.  Our task is
> limited to determining whether the ALJ's factual findings are supported by
> substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  While

review of the Commissioner's factual findings is deferential, review of her legal

conclusions is *de novo*.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically-determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A); 20 C.F.R. § 404.1505(a).  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. ▪ 416.905(a).  A

person will be determined to be disabled only if his impairments "are of such severity

that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."   42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966.  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. ▪§ 423(d)(2)(B) and 1382c(a)(3)(G).  20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further.  At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled.  At the second step, if the applicant's impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling.  20 C.F.R. ▪ 404.1525.  If the applicant's

3

impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions.   At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy.  42 U.S.C. ▪ 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four.  The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.   The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work

level, then the grids may not be used to determine disability at that level.  Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics.  *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).  The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist.  If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts.  If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1]  An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision.  If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review.  42 U.S.C. ▪ 405(g).  If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration.  20 C.F.R. Part 404, Subpart Q (▪ 404.1601, *et seq.*).  Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

## Background

Ms. Avant applied for benefits in April and May 2005 and the Commissioner denied those applications in December 2007.  (R. 16.)  Ms. Avant sued for judicial review in April 2008 (Cause no. 1:08-cv-467-JMS-LJM).   That same month, she filed new applications for D.I.B. and S.S.I. benefits.  (R. 420.)  The Commissioner granted those applications in December 2008, awarding benefits as of April 9, 2008, the earliest date of her new applications.   (*Id.*)   Subsequently, in July 2009, this Court reversed the Commissioner's denials of Ms. Avant's original applications and remanded her claims for reconsideration.  (R. 532-51.)  In August 2009, the Commissioner's Appeals Council assigned Ms. Avant's original applications to an ALJ, with instructions for reconsideration, including limiting consideration of her disability to the time period before April 9, 2008, the date that S.S.I. benefits had been granted.  (R. 419-22.)

A different ALJ than decided her original applications held a new hearing in October 2010, at which Ms. Avant and a vocational expert testified.  Ms. Avant was represented by present counsel during that hearing.  In January 2011, the ALJ denied Ms. Avant's claims for benefits for the period between May 31, 2004, her alleged onset date, and April 9, 2008.  The Appeals Council denied her request for review, (R. 331), which made the ALJ's decision the final decision of the Commissioner on her claims and the one that this Court reviews.

Initially, the ALJ found that Ms. Avant met the insured-status requirements of the Social Security Act for disability-insurance benefits through September 30, 2006. (R. 337, 340.) Therefore, he found that the period for determination of eligibility for D.I.B. was May 31, 2004 (the alleged disability-onset date) through September 31, 2006, and the eligibility period for S.S.I. benefits was April 26, 2005 (the date that Ms. Avant filed for S.S.I. benefits) through April 9, 2008. (R. 337.)

At step one of the sequential evaluation process, the ALJ found that Ms. Avant had not engaged in substantial gainful activity since her alleged onset date. (R. 340.) At step two, he found that she had the severe impairments of herniated nucleus pulposus,[2] degenerative disc disease, and obesity. He found that Ms. Avant's alleged depression was not severe. (R. 340-42.) At step three, the ALJ found that Ms. Avant's impairments — severe and non-severe, singly and in combination — did not meet or medically equal

---

[2] "The protrusion of the tissue within an intervertebral disk through the ruptured rim of the disk, resulting in a herniated mass which may press upon the spinal cord. An intervertebral disk is a coin-shaped piece of elastic tissue (mostly gristle) which is interposed between two adjacent vertebrae, so as to allow some motion and give the spine flexibility. Such a disk is composed of a tough outer portion or rim and a relatively soft center. It may be envisioned as a jelly-filled doughnut. If such a doughnut were to be pressed between two plates of glass, it would be found that eventually the outer tough part would break and the jelly would burst out through the break. The jelly of the jelly doughnut is the equivalent of the *nucleus pulposus* in the intervertebral disk. When this soft tissue breaks through the rim of the intervertebral disk, the condition created is a herniation of the nucleus pulposus. One of the causes of such herniation is extreme compression of the vertebrae, as during a fall or a jump. If the herniation is toward the canal of the spine, the herniated nucleus pulposus may press on the spinal cord, the "cable" of nerves within the canal of the spine." J. E. Schmidt, *Attorneys' Dictionary of Medicine,* "herniation of nucleus pulposus" (2014) (available on Lexis at 3-H Attorneys' Dictionary of Medicine H-55909).

any of the listings of impairments.  He specifically examined listings 1.04 (disorders of the spine), and listings 1.00Q, 3.00I, and 4.00F for obesity.  (R. 342-44.)

For the purposes of steps four and five, the ALJ determined Ms. Avant's residual functional capacity ("RFC").  He found that she had the RFC for sedentary work with the added restriction of being allowed to elevate her legs, during the workday, at a height of no more than twelve to eighteen inches.  (R. 344.)

At step four, the ALJ found that, given Ms. Avant's RFC, she was capable of performing her past relevant work as a telephone customer-service representative.  (R. 351.)  Therefore, he found that she was not disabled from May 31, 2004 through April 8, 2008, did not proceed to step five, and denied her claims.

## Discussion

Ms. Avant argues three errors in the ALJ's decision.

**1. Listing 1.04A analysis.**  Ms. Avant argues that the ALJ erred in his step-three analysis of Listing 1.04A by **(1)** failing to cite the specific subpart of listing 1.04 that he considered (A, B, or C), omitting any language for subpart B, and jumbling up the criteria for A and C in his discussion; and **(2)** adding to listing 1.04A a requirement that her symptoms be "persistent", "continuous", or "consistently present" for twelve months.

Listing 1.04 reads:

1.04   *Disorders of the spine* (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, Listing § 1.04.

Ms. Avant first faults the ALJ for confusion regarding which subpart of listing 1.04 that he evaluated.  She argues that the ALJ addressed, in a jumbled manner, criteria from both subparts A and C and did not address the criteria for subpart B.  The ALJ found that, although Ms. Avant has two of the specifically named disorders of the spine that are required by listing 1.04 — a herniated nucleus pulposus and degenerative disc disease — he found that the none of the three other conditions that are required by each subpart existed: "there is no evidence of nerve root compression [subpart A], spinal arachnoiditis

9

[subpart B], or lumbar spinal stenosis [subpart C] resulting in an inability to ambulate effectively."  (R. 342 (citation omitted).)  Because one of those conditions must exist, that finding alone resolves the applicability of listing 1.04.  However, the ALJ proceeded to evaluate whether the additional symptoms that listing 1.04's subparts require existed and, while it would have been helpful for the ALJ to have more precisely structured the articulation of his analysis, his evaluation of each subpart is easily discerned and can be meaningfully reviewed.

**Subpart A.**   The ALJ found that Ms. Avant has **(1)** a herniated disc and degenerative disc disease, (R. 343, ¶ 2), with **(2)** neuro anatomical distribution of pain, (*id.*; R. 343, ¶ 2), **(3)** limitation of spinal motion, (R. 342, ¶¶ 5 and 6), **(4)** some muscle weakness, (R. 342, ¶ 5; 343, ¶ 3), **(5)** slightly decreased reflexes, (R. 342, ¶ 6), and **(6)** positive straight-leg raises, (R. 342, ¶ 5; 343, ¶¶ 1 and 2), but **(7)** no evidence of root compression, (R. 342, ¶ 5), and no persistent evidence of **(8)** motor deficits, (R. 342, ¶¶ 5 and 6), **(9)** sensory deficits, (*id.*), or **(10)** atrophy, (*id.*; R. 343, ¶ 1).  The ALJ thus addressed all the criteria of listing 1.04A.

**Subpart B.**   The ALJ found that Ms. Avant has **(1)** a herniated disc and degenerative disc disease, but **(2)** no evidence of spinal arachnoiditis,[3] (R. 342, ¶ 5).

---

[3] "Inflammation of the arachnoid membrane," which is "[t]he delicate middle membrane of the three membranes which cover the brain and spinal cord."  *Attys' Dict. of Med.*, "arachnoiditis" and "arachnoid" (available on Lexis at 1-A Attorneys' Dictionary of Medicine A-10267 and A-10248).  The Listings also define spinal arachnoiditis at 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.00K2.

Although he did not address any of the other criteria of subpart C, all the criteria must be satisfied. Thus, the ALJ effectively addressed satisfaction of listing 1.04B. Ms. Avant neither asserts nor cites record evidence showing that she has spinal arachnoiditis.

**Subpart C.** The ALJ found that Ms. Avant has **(1)** a herniated disc and degenerative disc disease, but **(2)** no evidence of lumbar spinal stenosis,[4] (R. 342, ¶ 5), **(3)** no persistent evidence of muscle weakness, (R. 343, ¶ 3), and **(4)** she did not have an inability to ambulate effectively, (R. 342, ¶¶ 5 (no evidence of inability to ambulate effectively) and 6 (gait and deep tendon reflexes generally within normal limits; slightly antalgic gait); 343 ¶¶ 1 (no medical source of record opined that Ms. Avant medically required an assistive device to ambulate; evidence does not establish inability to ambulate effectively)). Thus, the ALJ addressed all the criteria of listing 1.04C except for chronic nonradicular pain. However, because all of the criteria must be met, the ALJ effectively addressed whether Ms. Avant satisfied listing 1.04C.

Next, Ms. Avant argues that the ALJ improperly added to the listing the requirement that its listed symptoms be "sufficiently 'persistent', 'continuous', or 'consistently present' for twelve months," and denied her claims for failing that requirement. (*Plaintiff's Brief in Support of Complaint To Review Decision of Social Security*

---

[4] "A narrowing of the spinal canal (the long channel within the bony structure of the spine), usually as a result of hypertrophic (pertaining to abnormal enlargement) degenerative changes of the bony structures." *Attys' Dict. of Med.*, "spinal stenosis" (available on Lexis at 5-S Attorneys' Dictionary of Medicine S-110789). Lumbar spinal stenosis is also defined in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.00K3.

*Administration* [doc. 21] ("*Brief*"), at 17.)   She argues that "[h]er treatment for these problems, however, spans a period of several years, from 3-8-05 to 3-4-08." (*Id.*)  In her response, the Commissioner points out that it is her regulation, not the ALJ, that imposed a twelve-month duration requirement:

> At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. § 1520(a)(4)(iii).  Ms. Avant replies only that the Commissioner "confuses the 12 month durational requirement for the concepts of 'continuous', 'persistent', or 'consistently present'," which improperly "increase[d] the claimant's burden of proof . . . ." (*Plaintiff's Response to Defendant's Memorandum* [doc. 32], at 3-4.)

The ALJ did not find, and the Commissioner does not argue, that Ms. Avant's degenerative disc disease or herniated nucleus pulposus — the predicate impairments for application of listing 1.04 — did not exist for at least twelve months.  It is well-established that the twelve-month duration requirement applies not only to the impairment that is the reason for a claimant's disability but to the disability itself, *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002), and that an impairment satisfies a listing only when all of the listing's specific findings are satisfied, *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).  It follows that, if a claimant alleges that she is disabled because her impairment(s) satisfy a listing, then the impairment(s) must satisfy, or be expected to satisfy, the listing for at least twelve months.  *See Whitehead v.*

12

*Colvin*, No. C15-5143RSM, 2015 WL 9179653, *2 (W.D. Wash., Dec. 17, 2015); *Hiett v. Colvin*, No. 5:14-cv-87-LLK, 2015 WL 778695, *2 (W.D. Ky., Feb. 24, 2015); *Wyre v. Commissioner of Social Security Administration*, Civ. Action No. 13-201-JWD-RLB, 2015 WL 589738, *6 (M.D. La., Feb. 11, 2015).

Although Ms. Avant opposes her three-year treatment history for "these problems" against the ALJ's asserted requirement of persistent, continuous, or consistently present symptoms, (*Brief*, at 17), she offers no factual or legal explanation of the conflict, which renders any intended argument difficult to discern and, for lack of factual and legal development, forfeited.

Alternatively, guessing that Ms. Avant intends to argue that that the ALJ improperly required simultaneous or closely proximate medical findings showing the presence of all of the symptoms required by the listing, *see Radford v. Colvin*, 734 F.3d 288, 292-94 (4th Cir. 2013), then her argument is unpersuasive.

As noted above, a finding of disability at step three requires that a claimant establish that she has an impairment that has satisfied, or can be expected to satisfy, a listing's criteria for at least twelve months. 20 C.F.R. § 404.1520(a)(4)(iii). In order to satisfy listing 1.04, a claimant must show that she has had, or can be expected to have, for at least a continuous twelve-month period: **(1)** a spine disorder that results in compromise of a nerve root or the spinal cord; with **(2)** nerve-root compression, spinal arachnoiditis, or lumbar spinal stenosis; and **(3)** the presence of a different set of

symptoms depending on which condition in (2) is present. The Commissioner recognizes that "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation," 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, §1.00D. Therefore, while there need not be, and sometimes cannot be, simultaneous or closely proximate medical findings, tests, or reports showing the presence of all of the required symptoms, the medical findings over time must be sufficient to establish that all of the required symptoms were, or can be expected to be, present together during a continuous twelve-month period, in order to satisfy the listing.

The ALJ found that Ms. Avant did not meet or medically equal Listing 1.04 because (1) there was no evidence of nerve-root compression, spinal arachnoiditis, or lumbar spinal stenosis, and (2) all required symptoms were not present during a continuous twelve-month period. On these specific grounds, Ms. Avant's only argument is that "[h]er treatment for these problems . . . spans a period of several years . . .", without identifying specific symptoms and supporting findings. She does not point to any evidence of spinal arachnoiditis or lumbar spinal stenosis in the record, and a cursory review does not reveal any.[5] Thus, neither listing 1.04B nor C can apply. The ALJ also

---

[5] Ms. Avant stated that the ALJ "conceded that the evidence proved she had . . . nerve root compression [and] stenosis with limitation of motion", (*Brief*, at 16), but no such concession appears in the ALJ's decision.

14

found no evidence of an inability to effectively ambulate and Ms. Avant does not identify evidence of the same, which also renders listing 1.04C inapplicable.

Regarding Listing 1.04A, the ALJ found that Ms. Avant's spinal motion has been restricted intermittently and her straight-leg-raises results have been positive on most occasions.  However, he found that she "has no persistent evidence of motor deficits, sensory deficits, or atrophy," (R. 342, ¶ 5), which renders Listing 1.04A inapplicable as well.  The ALJ did not require simultaneous or closely proximate evidence of all of the listing 1.04A required symptoms.  Rather, he found no evidence of motor deficits at any time and, while he found that the evidence showed that she experienced muscle weakness, decreased reflexes, and decreased sensation for a few weeks in April 2005, later tests showed much improvement after administration of a nerve block.  (R. 343.)  By her December 2005 examination, she did not show any sensory or reflex loss.  (*Id.*)  These symptoms manifested again at the end of February 2006, but then were absent in May and June 2006.  (*Id.*)  He found that this evidence does not support a conclusion that Ms. Avant satisfied Listing 1.04A for any period of twelve months before her insured status expired at the end of September 2006.  He noted that, other than pain medication, she did not have any further treatment after this time until February 2008, when she began a series of epidural steroid injections, which were her first injections since March 2005.  He noted that it was shortly afterward that the state agency granted her second application for S.S.I. benefits.  Thus, the ALJ looked at chronology of the medical evidence of record

15

and found that some of the symptoms required to satisfy listing 1.04A did not exist for a continuous period of twelve months during the closed period under consideration.  His conclusion is supported by substantial evidence.

Ms. Avant has not shown that the ALJ applied an incorrect legal standard or that his factual findings regarding listing 1.04 are not supported by substantial evidence.

**2.  Credibility determination.**  Ms. Avant contends that the ALJ's credibility determination is contrary to the evidence and law because (1) his articulation included "boilerplate" that implies that he came to his RFC determination first and then judged Ms. Avant's credibility against it, rather than the reverse; (2) his articulation is perfunctory because he failed to cite any supporting evidence and was intentionally vague in order to prevent review; and (3) he ignored, misstated, and rejected all the evidence of her non-exertional impairments of chronic pain, numbness, and weakness, and their resulting functional limitations.

Because the ALJ explained the bases for his credibility determination in the record evidence, (R. 344-45, 349-51), which explanation indicates that he did not pre-judge credibility based on a prior RFC determination, he did not err by employing the semantic device of the "boilerplate", see *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

The ALJ's articulating of his credibility determination cites record evidence and was not vague.  (R. 349-51.)  The Court was able to easily follow and meaningfully review his rationale.  Ms. Avant's argument was perfunctory.

The ALJ's credibility discussion clearly addresses evidence of Ms. Avant's alleged chronic pain, numbness, weakness, and functional limitations.  (R. 349-51.)  Ms. Avant's argument was merely conclusory.

Ms. Avant has not shown error in the ALJ's credibility determination.

**3. RFC definition.**  Ms. Avant argues that "[t]he ALJ's RFC was erroneous because it omitted any reference to her documented intractable pain, numbness and weakness." (*Brief*, at 25.)   As the Commissioner points out, pain, numbness, and weakness are symptoms, not functional abilities or limitations; therefore, there was no reason for the ALJ to include, or refer to, them in his RFC definition.  If Ms. Avant intended to argue that the ALJ's RFC was erroneous because he did not include greater restrictions due to pain, numbness, and weakness, then she failed to make the argument that his findings are not supported by substantial evidence in the record.

**4.   Step four determination.**   Ms. Avant argues that the ALJ's step-four determination is erroneous because he articulated no specific findings regarding the physical and mental demands of her past jobs and, thus, failed to make a valid comparison that her RFC would permit her to return to past relevant work.   The

17

vocational expert listened to Ms. Avant's testimony about her previous jobs, (R. 665); classified the jobs' skill and exertional levels and other characteristics; and opined that, at the exertional level and with the restriction defined by the ALJ's RFC, Ms. Avant could perform her past job as a telephone customer-service representative.  (R. 665-66.)  It was not error for the ALJ to rely on the vocational expert's opinion for the comparison of prior work with current RFC.  Ms. Avant does not identify any aspect of her work as a customer-service representative that could not be performed with the ALJ's defined RFC. Ms. Avant has not shown error.

## Conclusion

Because Ms. Avant has not shown that the ALJ's decision is not supported by substantial evidence or the result of legal error, judgment should enter in favor of the Commissioner, affirming her denial of Ms. Avant's claims for disability benefits.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. ▪ 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. ▪ 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue,* 671 F.3d

629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura,* 622 F.3d 761, 777 (7th Cir.

2010); *Schur v. L. A. Weight Loss Centers, Inc.,* 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger*

*v. Apfel,* 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.,* 170 F.3d 734, 739

(7th Cir. 1999).

**DONE this date:**  02/01/2016

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.